UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANA McDONALD, f/k/a ANA BOETTCHER, individually and on behalf of all others similarly situated, )))) | |
| Plaintiff, )) | |
| vs. )) | Case No. 4:07CV0001 AGF |
| NEXTSTUDENT INC., ))) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motion for summary judgment.[1] Plaintiff Ana McDonald filed this action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA" or the "Act"), against Defendant NextStudent, Inc. In her second amended class action complaint, Plaintiff alleges that Defendant obtained credit information of numerous individuals within the State of Missouri, including herself, without their authorization, and sent a promotional letter to them without extending a firm offer of credit in these letters, in knowing and willful violation of the FCRA. Plaintiff seeks statutory damages, punitive damages, costs, attorneys' fees, and an injunction against Defendant from further violations of the FCRA. For the reasons set forth below, Defendant's motion for summary judgment shall be denied.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

## BACKGROUND

The record establishes that in November 2006, Plaintiff received a mailing from Defendant, labeled, "Important Notice to Ana Boettcher," and stating as follows: "Dear Ana, Please contact us regarding your student loans at your earliest convenience, toll free at (800) 799-7318. This is not a late payment notice. NextStudent is not your current lender. [Hours of operation.] Respectfully yours, NextStudent [contact information]." At the bottom of the form was the following statement: "You can choose to stop receiving 'prescreened' offers of credit from this and other companies by calling toll-free 1-888-5-OPT-OUT. See <u>Prescreen & Opt-Out Notice</u> on reverse for more information about prescreened offers." The notice on the back of the letter stated as follows:

> You have been selected to receive this offer because your consumer report from one of the three major bureaus met initial criteria. Borrowers may meet eligibility requirements while in their grace period or repayment and if not currently in default on their federal education loans with a balance of $10,500 and above. If at the time of the offer you no longer meet initial criteria, this offer may be revoked. If you do not wish to receive any future promotional offers, please call (888) 567-8688, to opt out of the credit bureau mailing list.

(Pl.'s Ex. A to Doc. #40.) Plaintiff did not call Defendant or otherwise respond to the mailer or apply for a loan from Defendant.

Plaintiff alleges that she did not authorize any credit reporting agency ("CRA") to furnish information about her to Defendant, nor did she authorize Defendant to obtain or use her credit information. Plaintiff claims that Defendant knowingly and willfully violated the FCRA by accessing her credit information for an impermissible purpose -- to send her a solicitation, prohibited by the Act, rather than a permitted "firm offer of credit"

-- because the letter did not include one or more of the following material loan terms: the amount of credit being extended, the interest rate, the amortization period, and the method of computing the interest.

Plaintiff's class allegation asserts that this action is brought on behalf of all individuals in the State of Missouri who received the same promotional letter after Defendant obtained their credit information without their permission. A class action is appropriate, according to Plaintiff, because Defendant mass-mailed these promotional letters.

## ARGUMENTS AND EVIDENCE OF THE PARTIES

Defendant argues that the FCRA does not prohibit lenders from accessing consumer credit reports for the purpose of making a "multi-step" firm offer of credit, as Defendant asserts it did in this case. According to Defendant, the letter in question was "an invitation to start the process" for a firm offer of credit, whereby the offer itself would be made by Defendant over the phone to those recipients of the letter who called and were eligible.

In support of its motion for summary judgment, Defendant has submitted the affidavit of Christopher Sauer, an executive officer of Defendant in charge of overseeing sales and loan operations. Mr. Sauer described Defendant's "multi-step" process as follows: Each person to whom the mailing in question was sent was pre-screened by Defendant using criteria to establish his or her eligibility for a consolidation loan under the Federal Family Education Loan ("FFEL") program created by the federal Higher Education Act ("FHA"). If a recipient of the "invitation mailer" called Defendant, the

prospective client would be connected to one of Defendant's Education Finance Advisors, who would ask the caller a series of fact-finding questions to determine his or her eligibility for a FFEL consolidation loan. The Advisor would then explain how the loan consolidation program worked to those callers determined to be eligible. The Advisor would inform the caller that Defendant could provide an estimate of the caller's consolidation loan repayment schedule and interest rate by accessing the caller's student loan information on the National Student Loan Data System. If the caller agreed and provided his or her Social Security number, the Advisor would give the caller information about his or her outstanding loans, and offer the caller a FFEL consolidation loan and the option of completing the loan application online, with the Advisor walking the caller through the process over the phone; or of receiving by mail a copy of the application and instructions for its completion. Mr. Sauer further attested that "[t]o the best of my knowledge, [Defendant] did make a firm offer of a FFEL Consolidation Loan to each person who responded to the invitation and had a discussion concerning the FFEL Consolidation Loan program and was verified to be eligible for a FFEL Consolidation Loan." (Doc. #47.)

Defendant argues that Plaintiff's complaint is unfounded because it is based on the contention that the FCRA requires a firm offer in the initial mailing, and does not allow firm offers to be tendered in multiple steps or over the phone. Defendant also argues that it accessed Plaintiff's credit information for the purpose of offering her something of value in that the offer of a FFEL consolidation loan has inherent value. According to Defendant, "the consolidation of federal student loans . . . differs from most financial

offers in that the terms and conditions are strictly regulated by the HEA . . . . Consequently, the federal government establishes the 'value' of the offer." Furthermore, "the value of financing one's education through a federally insured debt consolidation program puts the offer of such consolidation on a higher plane of value vis-a-vis other offers of credit." Defendant points to the benefits of a FFEL consolidation loan in general, and of obtaining such a loan from Defendant in particular. (Doc. #46 at 9-10.)

Defendant states that the HEA requires that Defendant honor its FFEL consolidation loan offers, and that in any event, Defendant, in fact, honors such offers made to eligible borrowers. Defendant also argues that Plaintiff's complaint is "one of a plethora of recent class actions filed across the country . . . challenging mail pieces of all sorts,' based upon a misreading of a Seventh Circuit case, Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004) (holding that the FCRA's provision that a lender may only use and obtain consumer credit information for the purpose of making a "firm offer of credit" requires that the lender offer something of value as an extension of credit alone), as "dictating that every piece of mail must contain the offered loan principal, interest rate, amortization period, and method of computing interest." Defendant asserts that here, it "was making an offer of credit of considerable value that [Defendant] would, did and was required by law to honor, to any eligible borrower who wanted it." Id. at 14.

Defendant also argues that Plaintiff lacks standing because she failed to call Defendant, frustrating the transaction, and making it impossible to receive an oral firm offer of credit. Defendant argues, in addition, that Plaintiff cannot prove a willful violation of the FCRA. Defendant has submitted the February 27, 2007 affidavit of

Phillip Tannenbaum, Defendant's Director of Marketing - Direct Mail Division. Mr. Tannenbaum attests that he has been in the student loan consolidation field since 1996, and that he "orchestrated the direct marketing campaign" pursuant to which Plaintiff received the mailing in question. He further attests as follows: "As I understand marketing, the [FCRA] has always allowed the making of firm offers of credit orally, and that thus there is nothing inappropriate about using a direct mail piece to solicit a prospective client to call and, upon receiving a call, for our trained Education Advisors to extend an oral firm offer of credit tailored to the prospective client's needs." Doc. #13.

In opposition to Defendant's motion for summary judgment, Plaintiff first argues that Defendant is not entitled to summary judgment at this point in the proceedings because Plaintiff has not yet been able to conduct discovery. Plaintiff also argues that Defendant's letter did not constitute a firm offer of credit, and was nothing more than a solicitation because it did not include any of the material terms of the loan. Relying on Cole, Plaintiff argues that she was offered nothing of value in exchange for Defendant's accessing her credit information. According to Plaintiff, the letter, which does not even mention that it is offering a loan, but simply provides a telephone number to call, was merely an unsolicited advertisement. Plaintiff also argues that she has standing to bring this claim, and that she can prove that Defendant willfully violated the FCRA.

## DISCUSSION

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and

6

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(b) provides that a defendant may "at any time, move with or without supporting affidavits for a summary judgment . . . ." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Phillips v. Grendahl, 312 F.3d 357, 360 (8th Cir. 2002).

The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law." Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

**The Fair Credit Reporting Act**

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2205 (2007); see also 15 U.S.C. § 1681. Among other things, the Act sets out certain permissible purposes for which a CRA may furnish credit reports to lenders. In 1996, Congress amended the FCRA to allow a CRA to furnish a lender a pre-screened list of names and addresses of consumers who met certain

7

criteria, without each consumer's consent, as long as the lenders planned to extend to the consumers a "firm offer of credit," as follows. Under § 1681b(a) of the Act, a CRA is permitted to furnish, "subject to subsection (c)," a consumer report "To a person which it has reason to believe -- intends to use the information in connection with a credit transaction involving . . . the extension of credit to . . . the consumer." Id. § 1681b(a)(3)(A).

Subsection (c) provides that if the credit transaction referred to in subsection (a) is not initiated by the consumer and the consumer did not authorize the CRA to furnish his consumer report to a person requesting it, then the requester may receive the consumer's name and address, but "only if . . . the transaction consists of a firm offer of credit . . . ." Id. §§ 1681b(c)(1)(B)(i), 1681b(c)(2).

> By permitting a creditor to obtain limited information, the Act allows creditors, like banks, to pre-screen potential customers. In the pre-screening process, credit reporting agencies compile lists of customers who meet specific criteria provided by the creditor, and then provide the lists to a creditor, who uses the lists to solicit customers with firm offers for credit . . . .

Kennedy v. Chase Manhattan Bank, USA, NA, 369 F.3d 833, 840-41 (5th Cir. 2004) (citing 16 C.F.R., pt. 600, app. "Prescreening") (Federal Trade Commission's commentary on the FCRA)); see also In re Trans Union Corp. Privacy Litigation, 211 F.R.D. 328, 335 (N.D. Ill. 2002) (explaining that § 1681b(c)(1)(B)(i) allows "the sale of target marketing lists provided the lists are used for making firm offers of credit . . . to the consumers on the list"); Sen. Rep. 103-209, at 16 (1993) (1993 WL 516162) (describing the firm-offer-of-credit section of the statute as "the prescreening section").

The FCRA defines "firm offer of credit" as "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." Id. § 1681a(l). The offer may be further conditioned on one or more of the following: (1) the consumer being determined to "meet specific criteria bearing on creditworthiness"; (2) verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer"; and (3) the consumer "furnishing any collateral that is a requirement of the extension of credit." Id. § 1681a(l).

In creating § 1681b(c)(1), Congress "balance[d] any privacy concerns created by pre-screening with the benefit of a firm offer of credit . . . for all consumers identified through the screening process." Cole, 389 F.3d at 725 (citation omitted). "Congress apparently believe[d] that people are more willing to reveal personal information in return for guaranteed offers of credit than for . . . sales pitches." Id. (quoting Trans Union Corp. v. FTC, 267 F.3d 1138, 1143 (D.C. Cir. 2001)); see also Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955-56 (7th Cir. 2006) ("Cole's objective was to separate bona fide offers of credit from advertisements for products and services.").

Section 1681b(e) gives the consumer the option to have his name and address excluded from any list provided by a CRA under § 1681b(c)(1)(B), by notifying the CRA of this wish. The Act also provides as follows:

> Any person who uses a consumer report on any consumer in connection with any credit . . . transaction that is not initiated by the consumer, that is provided to that person under section 1681b(c)(1)(B) of this title, shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement that--

9

>(A) information contained in the consumer's consumer report was used in connection with the transaction;
>
>(B) the consumer received the offer of credit or insurance because the consumer satisfied the criteria for credit worthiness . . . under which the consumer was selected for the offer;
>
>(C) if applicable, the credit or insurance may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness . . . or does not furnish any required collateral;
>
>(D) the consumer has a right to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit . . . transaction that is not initiated by the consumer; and
>
>(E) the consumer may exercise the right referred to in subparagraph (D) by notifying a notification system established under section 1681b(e) of this title.

15 U.S.C. § 1681m(d)(1)(A)-(E).

The FCRA prohibits "persons," including corporations, from obtaining or using a consumer credit report for any purpose not permitted by the Act. Id. § 1681f; Phillips, 312 F.3d at 363-64. Civil liability is imposed for the willful or negligent failure to comply with the Act. Any person who "willfully" fails to comply is liable to an affected consumer for actual damages, or statutory damages of not less than $100 and not more than $1,000; punitive damages "as the court may allow"; costs; and attorney's fees. 15 U.S.C. § 1681o(a). Willful noncompliance includes not only acts known to violate the FCRA, but also reckless disregard of one's statutory duty. Safeco, 127 S. Ct. at 2209-10. Civil liability for negligent noncompliance entitles an affected consumer to only actual damages and attorney's fees. 15 U.S.C. § 1681o.

The Eighth Circuit has not yet considered the parameters of what constitutes a firm offer of credit under the FCRA. Several recent cases from this District have acknowledged the "some value" test articulated by the Seventh Circuit in <u>Cole</u>, and later explained in <u>Murray</u>, 434 F.3d at 955-56. As stated in <u>Cole</u>, "the statutory scheme of the FCRA makes clear that a 'firm offer' must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." <u>Cole</u>, 389 F.3d at 726. The cases from this District explain that absent a requirement that an offer of credit have "some value to a consumer that is more than nominal, . . . an offer of credit would be no more than a sham, or the equivalent of an advertisement." See <u>Poehl v. Countrywide Home Loans, Inc.</u>, 464 F. Supp. 2d 882, 885 (E.D. Mo. 2006); <u>see also</u>, <u>e.g.</u>, <u>Klutho v. Shenandoah Valley Nat'l Bank</u>, 2007 WL 1527074, at *2-3 (E.D. Mo. May 22, 2007). These cases essentially consider whether "a reasonable person viewing [the] mailers would believe that they contain some value." <u>Klutho</u>, 2007 WL 1527074, at *3.

The Court rejects Plaintiff's argument that the mailing in question here cannot qualify as a "firm offer of credit" because it does not specify the amount of credit offered, the amortization period, and the method of computing interest. Congress did not require that such terms be included in the written mailing, and their absence does not preclude the mailing here from being a firm offer of credit. See <u>Forrest v. J.P. Morgan Chase Bank</u>, 2007 WL 4454123, at *15, 18-19 (Dec. 10, 2007) (holding that because the FCRA does not require the disclosure in a firm offer of credit of amount of credit and interest rates, courts should not imply such additional disclosure requirements; explaining that the import of <u>Cole</u> was that a firm offer of credit must have economic value, rather than

11

which terms must be included); Poehl, 464 F. Supp. at 886 (the absence of loan terms from a mailing by a lender does not preclude it from being a firm offer of credit); Crossman v. Chase Bank USA NA, 2007 WL 2702699, at *4 (D.S.C. 2007). This is especially true in the context of an FFEL consolidation loan, because the HEA imposes upon the lender the material terms of such a loan. Zawacki v. Goal Fin., LLC, 483 F. Supp. 2d 653, 658 (N.D. Ill. 2007).

Here, however, the letter mailed to Plaintiff (and the members of the putative class) not only does not include any loan terms and does not mention the HEA or the FFEL, it would simply not be recognized by a reasonable consumer as an offer of credit. The letter is not labeled or presented as an offer, but as a "Notice." The only places that the word "offer" appears are in the opt-out notices. And the only places that the word "credit" appears are in the notification that Plaintiff could stop receiving prescreened offers of credit by calling a toll-free number, and in the last sentence of the "PreScreen & Opt Out Notice" on the reverse side of the letter, telling Plaintiff that if she "did not wish to receive any further promotional offers, please call (888) 567-8688, to opt out of the credit bureau mailing list."

Although Congress chose a broad definition of a "firm offer of credit," and courts have been lender-friendly in finding less-than-complete offers to constitute a firm offer of credit, the Court concludes that here, Defendant has not met the minimum requirements of the Act. Cf., e.g., Sullivan v. Greenwood Credit Union, ___ F.3d ___, 2008 WL 726135, at *1, 6 (1st Cir. March 19, 2008) (holding that a mailing which stated, "[b]ecause of your excellent credit, you have been pre-approved for a home loan, up to

12

100% of the value of your home . . ." was a firm offer of credit).  In sum, the Court does not believe that the letter Plaintiff received can be said to be a firm offer of credit, as that term has been statutorily defined and judicially interpreted.

In Dixon v. Shamrock Fin. Corp., 482 F. Supp. 2d 172 (D. Mass. 2007), the District Court of Massachusetts determined that a lender's letter, which the court believed "might lie on the outer rim of the permissible," qualified as a firm offer of credit.  Id. at 176.  The letter in question offered the consumer a "free consultation"; told the consumer that the lender "can pay off your revolving debt and refinance your mortgage balance at a lower rate"; and stated, "This is not a commitment to make a loan.  All approvals are subject to underwriting guidelines.  Minimum and maximum loan amount apply.  Rates and programs subject to change at any time . . . ."  Id. at 173.  Even granting that Dixon was correctly decided, the Court concludes that here Defendant's mailer is beyond the rim.  As noted above, Defendant's mailer nowhere mentions that it is an offer for credit, or even that it relates to a consolidation of student loans.

Defendant, in essence, concedes that the mailer it sent to Plaintiff was not a firm offer of credit.  Defendant argues, however, that the FCRA does not prohibit a multi-step process whereby the firm offer of credit is later extended to the consumer orally.  The Court does not believe that the FCRA allows a lender such as Defendant to access consumers' credit information without the consumers' authorization, for the purpose of sending them the kind of written "invitation to begin the credit process" involved here, even if down the road, a firm offer of credit is extended orally.  Defendant has not cited, nor has the Court found, any cases which support Defendant's position.  Moreover,

Defendant's position does not seem to be consistent with the language of the statute itself. Section 1681m(d)(1), quoted above, especially subsections (B) and (C), assumes that an unsolicited "written solicitation made to the consumer regarding the transaction" include the firm offer of credit. This reading of the statute is confirmed by the legislative history of § 1681b(c)(1)(B)(i) which indicates Congressional intent that the opt-out provision be included in the <u>first</u> "prescreening or direct marketing solicitation." The required opt-out language, in turn, presumes that a firm offer of credit has been made. <u>See</u> Sen. Rep. 103-209, at 25-26 (1993) (1993 WL 516162).

For similar reasons, the Court finds Defendant's standing argument, which is based upon the fact that Plaintiff did not call Defendant, to be without merit. <u>See</u> <u>In re Trans Union Corp. Privacy Litigation</u>, 211 F.R.D. at 336 (holding that plaintiffs who alleged that their own personal credit information was disclosed for an improper purpose established their standing to sue under the FCRA).

The Court cannot conclude at this stage of the proceedings that Defendant's violation of the FCRA was not willful, as that term has been defined by the Supreme Court in <u>Safeco</u>, 127 S. Ct. at 2209-10, 2215-16. The Court notes that Defendant's argument that Plaintiff has failed to show a willful violation of the FCRA is based upon pre-<u>Safeco</u> cases which interpreted willful in this context more narrowly than the term is interpreted in <u>Safeco</u>.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **DENIED**. [Doc. # 44]

                                                              _____
                                                              AUDREY G. FLEISSIG
                                                              UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2008.